Case number 14-4002. Joseph Reddy v. Bennie Kelly. All arguments not to exceed 15 minutes per side. Ms. Anna Lumelski for the appellant. Good morning. May it please the court, my name is Anna Lumelski. I represent the appellant Joseph Reddy. I'm here with my colleagues David Rollins-Boyd and Mark Matushak. I'd like to reserve three minutes of my time for rebuttal. You may. Thank you. This appeal stems from the district court's erroneous denial of Mr. Reddy's petition for habeas corpus based on the ineffective assistance of his state trial counsel. In particular, Mr. Reddy's state court counsel failed to introduce at trial evidence of Mr. Reddy's diagnosed psychiatric condition, post-traumatic stress disorder, despite the fact that that evidence was highly significant to his defense under Ohio law. Now the state does not dispute or even discuss most of the points that Mr. Reddy made in his briefing, but I'd like to start by responding to the main argument that the state does make in its brief. The state asserts that psychiatric evidence would not have been admissible at Mr. Reddy's trial under Ohio law. As we described in our reply brief, that contention is at odds with settled Ohio law, including the 2007 decision of the Ohio Court of Appeals in the State v. Warner case cited in our brief, in which the court explicitly held that, quote, evidence that the defendant is suffering from post-traumatic stress disorder is appropriate in a case where the defendant seeks a voluntary manslaughter instruction. And that conclusion is consistent with a number of other Ohio cases also cited in our brief, which make clear that this type of testimony would, in fact, have been admissible. So the state's argument on that point is flatly incorrect and not a basis for denial here. Beyond that point, I'd like to address two main arguments. The first is that the failure of counsel to introduce evidence of PTSD was ineffective assistance of counsel because the evidence was clearly relevant and there was no strategic reason to exclude it. And the second argument is that this court should apply a de novo review standard here because the state court misconstrued Mr. Reddy's claim and therefore did not adjudicate it on the merits. There's an argument that, I know you said there's no strategic reason for that evidence not to have come in, but, you know, how can we say that it was not, in fact, trial strategy not to bring that in? And if it was trial strategy, doesn't that put this in a whole different context? This court can conclude that it was not trial strategy. And the reason is that the trial counsel argued in his closing argument that this was voluntary manslaughter. In fact, as the state of Ohio court recognized, that was essentially his entire strategy. There was no argument about innocence here. There was an argument that a lesser charge should apply. And if you look at the report of Dr. Fabian, which we can treat as essentially a proffer of what he would have testified to, it says not only that he has PTSD, but, quote, that there is a nexus between Mr. Reddy's mental illness, his abusive history with his mother, and his homicidal behavior. Counsel, that's where I would like to go with because here's my problem I'd like you to address. In a lot of these PTSD cases, you have a person who seems to be relatively, quote, normal, and then they do something and you say, ah, you know, he had brain injury 10 years ago or he fought in Iraq or something and nobody knew about it. In this case, the court had and read into the record the Lecky report, which talks about varieties of mental illness, of bipolar disorder, of suicides, of oppositional defiant disorder, and then you read the Fabian report and a lot of it is quite similar. It's true it uses the term PTSD as something that's additional to what's in the Lecky report, but the judge here, and it wasn't even a jury, clearly knew about the abuse, clearly knew about the mental problems, and the exact summary that you just gave doesn't refer to PTSD. I believe there is a nexus between his mental illness, his abusive history, and clearly the judge, and it was all in the record, knew about mental illness and abusive history. So the question is, in this case, why is the addition of the term PTSD so vital? A few points. The first is that the report that you're referring to was not part of the trial. It was part of the discussion of competency on an entirely different subject. Trial counsel did not introduce it on that. But the judge, I mean, it's the same judge, right? Yes, but the larger point, Your Honor, is that under Ohio law, a fact finder does not need to consider voluntary manslaughter, and I should note the trial judge stated that she did not consider voluntary manslaughter. And under Ohio law, that was permissible, unless there is evidence on the two different prongs of the voluntary manslaughter statute, the objective prong and the subjective prong. There was copious evidence on the objective prong here, but there was no evidence on the subjective prong. What is your citation that the judge said that she did not consider the voluntary manslaughter? Because I thought she certainly gave arguments as to why she wouldn't, especially during the discussion of the motion for acquittal. She says, if you were a jury, wouldn't you say they should be charged? Wouldn't that be your analysis? And he comes back and argues about it, but the judge dismisses it, not because they didn't consider it, but because the judge had found or was going to find aggravated murder. Is that the discussion that you're referring to? No. At page 904 of the record, the court said, you don't go from ag murder to voluntary. That's a direct quote. So she essentially said, I'm – Actually, I'm looking at – yes. In fact, that's exactly the page I'm looking at. And she – But that doesn't mean she's not considering it. She's explaining why she's not doing it. Well, I'd also like to point to pages 9 – let's see. There's so many pages. At 999 of the record, which at the resentencing that occurred in this case, she specifically acknowledged – there was a colloquy between the defendant and the judge. Right. I'm looking at that. And he argued that he had not had a chance to argue voluntary manslaughter and have the judge consider it. And she acknowledged the legal problem that he was pointing out, quote, by the court rejecting the argument that it was a murder as opposed to aggravated murder, you were prevented from going on to what's called an inferior offense, going to talk about the inferior offense, the voluntary manslaughter. So she explicitly said that she had not considered it. But that's because she had found aggravated murder, and then ultimately the court of appeals said that was wrong. And that's why I sort of have this feeling that isn't your problem with the Ohio court of appeals decision in rejecting part of what the trial court did, but not all of it. No, Your Honor. And you're not attacking the Ohio court of appeals decision here, as I understand it. You're attacking only the ineffective assistance of counsel. That's correct. But the finding of aggravated murder that the judge made was a finding on state of mind, whether there was a – whether there was – Prior calculation or design. Exactly. Prior calculation and design. This evidence was evidence on mental state, and specifically that he – that Mr. Reddy had PTSD, that that PTSD was directly linked to the killing. Had that evidence been introduced, the court would not have found prior calculation and would have considered voluntary manslaughter, as she would have been required to do because there was evidence on the subjective component, which was missing here. That connection. Could not a person both have a contract hit on someone, and then when they get into the fight, their PTSD causes them to be in a state of rage? There would still be prior calculation or design. I mean, that's the legal finding the court made here. I mean, maybe it was right or wrong, but that's why it is logically inconsistent with only being the murder occurring because of rage. Your Honor, we would argue that the report as laid out by Dr. Fabian, the statement of a direct link between the abuse, the PTSD, and the killing made – Stop you when you say the direct link. You're still looking at that same sentence about nexus, mental illness, not PTSD, mental illness. Yes. Right, okay. But it's important to point out that the report does not just say PTSD. It also draws that link, and that was missing from the earlier testimony generally about Mr. Reddy's mental state, which I – Again, just so I'm not missing your record argument, your link is that same last sentence about nexus. We would combine both the link language with the other statements about the fact that he had PTSD, but yes, that's correct. I also should note that the trial judge in this case explicitly stated that she found the report to be significant. When she saw it at the resentencing, when it was presented by appellate – She had actually seen it at the sentencing as well. She did see it at the sentencing. There was then an extended colloquy about it at the resentencing, and in that colloquy, she read a number of statements from the report into the record, including the statement about the link that we've discussed, and she specifically said that she found it to be significant. And so we would argue – and it's important, Your Honor, in considering this prejudice question, that Mr. Reddy's counsel presented no witnesses at trial. The only witnesses were witnesses for the prosecution, and the evidence of abuse that you've referred to was only brought out through those witnesses. Had there been a psychiatrist testifying for Mr. Reddy who would have laid out in detail Mr. Reddy's mental state and how that mental state was directly linked to the homicide, that would have made a very significant difference. When you just said that he called no witnesses, but these prosecution witnesses had already testified to a lot of abuse, is that correct? That's correct. And that seemed to be the strategy that he was following, that look, the abuse from the mother, the history, is so clear that it fully supports our argument that this was all in a sudden fit of passion, which the judge then overcame with the judge's view of the bloodstains and so on. Your Honor, we entirely agree that that was his strategy, and that's why there was no strategic reason to not introduce this evidence, because it was highly supportive of that point that he was in fact trying to make, and made the link that was missing from what he was saying. And just the last point I'd like to make is the Ohio v. Nemeth case from the Ohio Supreme Court explicitly makes clear that evidence of abuse and evidence of PTSD are not cumulative. In that case, it related to battered child syndrome. But in that case, the court found that the trial court had erred by excluding evidence of battered child syndrome despite the fact that there was evidence of abuse in that case. So the Ohio courts have made clear that evidence of mental illness is not cumulative of evidence of abuse, as the district court found here. Thank you. You'll have your time for rebuttal. May it please the court, Jonathan Corey from the Ohio Attorney General's Office, appearing on behalf of Respondent Apelli Warden. Do you still maintain that this was inadmissible? Yes, Your Honor. The Ohio Supreme Court affirmed recently in State v. Fulmer that the defense of diminished capacity is not recognized in Ohio. But I don't think this is diminished capacity, is it? Yes, it is, Your Honor. The appellant states in their brief in the statement of the issues specifically that this evidence at issue would have shown that Mr. Reddy lacked the state of mind and intent to commit the crime for which he was convicted. So I think right there, the appellant's admitting that this is diminished capacity. Isn't there a distinction between diminished capacity and what's the term that's used, inferior charge, that he had the capacity to commit the crime, but because he also had the mental state of being in a fit of rage or passion, then you get to voluntary manslaughter? Diminished capacity is he didn't have the ability to form the basic element of the charge, and the inferior offense is that he had an additional mental state that made him less culpable, even though he had the capacity to form the correct intent. Well, Your Honor, that seems to be a distinction without a difference. Without disproving that he had the requisite intent for murder, essentially without finding that there was an acquittal on the conviction of murder, the court would not be required to consider the inferior degree offense of voluntary manslaughter, and the Ohio Supreme Court has said that in State v. Shane. And so they said that a jury instruction was not warranted on voluntary manslaughter if there was not an acquittal on the charge of murder. Is that of ordinary murder or of aggravated murder? I believe that that was ordinary murder in that case, but I believe it would apply even stronger to aggravated murder. That's what I was saying. I thought it was the other way around, that aggravated murder prevents you from getting to voluntary manslaughter, but ordinary murder would not. Right, Your Honor. Well, I think that in either case, certainly aggravated murder, but also in murder, without an acquittal on the charged crime, there would be no reason to go down and consider voluntary manslaughter. It doesn't make sense because if voluntary manslaughter is murder with the addition of mitigating factors, you would always find that the elements of murder are there, and then you would have to consider whether there are mitigating factors. So it wouldn't be that you acquit them of murder first. I mean, what case tells you that, that you have to do it like that? Your Honor, that's State v. Shane. It's an Ohio Supreme Court case from 1992. This was in the context of a jury instruction, similar to the cases that appellant cites, essentially for a jury instruction to be required on an inferior degree offense in a murder prosecution. There must be sufficient evidence to allow a reasonable rejection of the greater offense as well as conviction. That's a statement of evidence necessary to be entitled to an instruction. Right. I mean, and one wonders if they really meant exactly that, but that's not the same as saying that – I mean, are you saying – let's step back for a moment. The first question was whether you still take the position that this was inadmissible. Now, you sort of went into a second issue, which is, assuming it is admissible as a matter of law, are you saying that this is not a case where there was any evidence of voluntary manslaughter? Well, Your Honor, this was a case where the objective prong – there was evidence of the objective prong of voluntary manslaughter, but – and this goes to the prejudice prong of Strickland – there was no evidence of the subjective prong of voluntary manslaughter, whether he was actually in a sudden fit of rage at the time of the crime. And could this have provided that subjective evidence? No, it could not, Your Honor. And the cases – each case that the appellant cites, the defendant in those cases testified in his trial. State v. Warner, for example, the expert psychiatric testimony that came in was meant to bolster or support the testimony of the defendant in that case. Why do you say that Dr. Fabian's testimony could not have provided that link? Because it seems that even the judge at the resentencing hinted at that, if not acknowledged it. So why do you say it couldn't have provided the link? Your Honor, it could not provide the link because Dr. Fabian's evaluation, regardless of its diagnosis, could not speak to Mr. Reddy's state of mind during the actual crime. But that coupled with the – I know we're talking subjective now, but that coupled with the other objective and the natural inferences drawn from that would not have been enough to get you to the point where you could consider that. Is that your position? Well, Your Honor, if I understand your question correctly, it certainly could be considered, but it would not satisfy that subjective prong because Dr. Fabian's analysis could absolutely provide a link and potentially bolster the testimony of Mr. Reddy had he testified. But it can really only say that he's maybe prone to a sudden fit of rage or had PTSD, but it cannot speak to whether at the time of the crime he flew into a fit of rage. So can't the circumstances support it? Not to satisfy the subjective prong. They certainly could support it, but in this case I don't believe that they do. Well, does a defendant always have to testify to get the manslaughter instruction? I suppose it would depend on the evidence of the case, but in this situation and in every single one of the cases that the appellant cites, any of the cases that were remanded in order to instruct on voluntary manslaughter, the defendant did testify in those cases. Suppose there could be, if there were a situation where there were other witnesses and the other witnesses testified that in the vernacular he hulked out during the fray, that would be something that you could do without testifying yourself, I suppose. Again, Your Honor, I think that it certainly could bolster the argument, but I do not think it could satisfy it. The Ohio Supreme Court actually addressed it. Why not, in the sense that witnesses as to what happened would at least be circumstantial evidence, because Judge White's question is sort of pushing you toward the point of, obviously a lot of times you don't want the defendant to testify, especially in a jury case. And so if you're going to have a strategy of trying to get voluntary manslaughter, you can't have a rule that says that you always have to have the person testify. Right, and this was a bench trial, though, just to clarify. No, that's a sort of point in your favor that the judge that I was raising earlier, the judge knew this stuff. It wasn't a question of how do you try to sell it to the jury. Well, Your Honor, at least in the Ohio Supreme Court, State v. Thomas, it's a 2014 case. This was a conviction on aggravated murder in a jury trial, and there was a witness to the murder, and the court concluded there was nothing in the record that indicated he was actually in a fit of rage, because that witness, though they were there to see the murder, they could not provide insight into his actual state of mind or level of agitation. Okay, and so I'm glad you raised that, because that goes exactly back to the point that Judge White raised. Because what you seem to be saying is that only the defendant who knows what's going on in his mind, his or her mind, can satisfy that subjective element. And if we agree with you there, that would basically say that unless a defendant takes a witness stand and testifies, he would never be entitled to that offense. And I think that that's sort of a dangerous road to take, because then we're automatically saying that you have to give up that right not to testify in order to get consideration of this offense. If, in fact, that's not the case, then you have to be able to use circumstantial evidence, other witness testimony, and just the overall circumstances to satisfy that subjective prong based on inferences that you draw from that universe of evidence. Isn't that right? Well, Your Honor, if I understand correctly, I think that it's important to point out that this is in the context of a Strickland claim, so we're really looking at whether or not the appellant was prejudiced by trial counsel's decision. And we would say that he's not because of this idea that he cannot satisfy the subjective prong, but also because the evidence here was sufficient to convict of murder, which is important to point out that the state appellate court made a point to say that they were pointing to evidence that Mr. Reddy admitted that he purposely pressed his hands to his mother's neck to render her unconscious, which ultimately killed her. And so the evidence was sufficient for murder as well. Didn't the evidence say that that happened after she, having ordered him out of her house, came into the room bearing a knife, and then he acted? And so if you have this evidence of the PTSD and the other abusive stuff, couldn't a reasonable jury find that even though the elements perhaps of the higher level are satisfied, that the mitigation evidence would get you into a category of voluntary manslaughter? I mean, couldn't that be the case? No, Your Honor, not in this situation. But even if it could be the case, again, we're really just looking at whether or not trial counsel was ineffective for not introducing this, and we would argue that obviously the answer to that is no. Assuming that it's admissible, you say it wasn't, right? Yes. Wasn't it his best evidence of mitigation factors? Well, other than his own testimony, perhaps it would be. But I think it's important to point out, and I'd like to return to State v. Warner, the main case cited by the appellant. Again, Warner did testify in that case, but that case was remanded because there was not a jury instruction on voluntary manslaughter, but there was also an assignment of error in that case that the evidence was insufficient for murder, and that assignment of error was overruled. So again, that's a case where the evidence was sufficient for murder, and it was a jury issue. A jury issue was the reason it got remanded. In this situation, the trier of fact was the judge, and she's presumed to have considered those lesser offenses, and as Your Honor pointed out, there's nothing saying that she didn't. What you call the lesser offense is this inferior degree offense. Right. I apologize. It's not technically either diminished capacity or lesser included. And again, as I understand it, and tell me if this is wrong, that a defendant, this is citing State v. Rhodes, for example, a defendant whose conduct satisfies the elements of murder then can get an inferior degree charge if he can show something different, which he shows a state of mind. So it's already you've met the elements for murder. Isn't that what the law is? That every, not every voluntary manslaughter, but this type of voluntary manslaughter presumes that you've met the elements for murder, and then you have an additional mental state of being sudden passion or sudden fit of rage. Yes, Your Honor. Okay. If there's no other questions. Okay. Anything else, judges? Okay. Thank you, counsel. Thank you. Ms. Lemelski, you have three minutes for rebuttal. Thank you. I'd like to address three main points. The first one is that the State agreed just a moment ago that there was evidence presented at trial on the objective prong of the voluntary manslaughter test and also agreed that there was no evidence presented on the subjective prong. That is a key statement because there was no evidence on the subjective prong. That meant that the trial court was not required to consider voluntary manslaughter, and as we discussed, she did not. Had this evidence been introduced, and again the State appears to agree that this evidence was relevant to the subjective prong, there would have been a reasonable probability that that would have changed the results, and to remind the Court, under Strickland, you do not need to make a finding that it definitely would have changed the results. The question here is whether there is a reasonable probability, and given the structure of the voluntary manslaughter statute and the concessions that the State has just made, we would argue that there's a strong basis for making that finding, and the State appears to assert that it would have been necessary for Mr. Reddy to testify. We would argue that there's no basis at all for such a requirement. Now, the second point I'd like to address is this question of the prior knowledge of the judge box that you raised. On that question, the fact that the judge had a general knowledge that Mr. Reddy had some mental issues, that discussion occurred in the context of discussing competency. We would argue that having a psychiatrist testify at the trial in the context of an argument that there was voluntary manslaughter would have been an entirely different question, again because he would have testified both to the PTSD, would have explained that PTSD can directly lead to a fit of rage, exactly as occurred in this case. Although you don't know that that's what the testimony would end up to be, you have the report, which we've kicked back and forth, but you sort of can't assume that the testimony is going to be as strong or as direct as that. That's one of the things that lawyers have to do in terms of deciding what track to take. No, Your Honor, but given what is in the report, which is actually very significant in itself, we think you can make a reasonable assumption that there would have been a discussion about what PTSD is. And based on the DSM manual, it lays out very clearly that PTSD is linked to fits of rage, as was discussed in the Warner decision. And the third point I just, in my last minute, last few seconds, just raised the de novo standard of review. The state has not disputed that here. We seem to be in agreement here that this court should apply a de novo standard of review. Thank you. Okay, thank you, Counsel. And Ms. Lemelski, we appreciate your taking this case under the Criminal Justice Act. We know it's probably not at your usual rates, but it's quite a service to the system of justice, and we appreciate it. That case will be submitted, and the clerk may call the next case.